Good morning, Your Honor. It's Bob Nichols for Appellant David Day. Apologies for overburdening the Court with my 28 J letters. You did get a little, uh... Your Honor, I think... No harm, no foul, because apparently some of us didn't... No harm, no foul, because some of us didn't read them. Your Honor, I think there are many issues in this case, but two essentially can resolve the case. The first involves AT&T's admission at page 44 of its brief that a cash out is not a rollover, and a rollover is not a pension benefit. If a rollover is not a pension benefit, it is not included in even the threshold of the SPD provisions that give the reasons why you offset pension benefits. So there's no offset. If... Yes, ma'am. I thought I heard a little bit of a southern accent. And if it's not a cash out, it's not included in the parenthetical cash outs or essentially amortized monthly that AT&T has essentially been contending is the reason it's offsettable for quite some time. The court had two holdings, essentially. One, that the rollover was within the ambit of pension benefits the participant may receive. If it's not a pension benefit, it's not within that ambit. That holding was on ER-9, the Court's opinion at ER-9. The other holding was that the Court said it must affirm unless a reasonable interpretation of pension benefits you may receive could not encompass a rollover. They admit it's not a rollover. I think they depend upon a constructive receipt argument. State Street Bank, the custodian for the trustee of the pension plan, bailed Mr. Day a check payable to Charles Schwab, trustee, with a letter instructing him to take it to his local Charles Schwab office. AT&T and Mr. Day did so. AT&T contends that this was constructive receipt, and therefore he received a cash out. Counsel, the difficulty I have with your argument is that the plan documents did give the administrator the authority to interpret. I agree, ma'am. And if it's a reasonable interpretation, how can that be an abuse of discretion? Well, ma'am, I don't believe it can be reasonable if AT&T admits that its prior interpretation was wrong. When they say a rollover cannot be a pension benefit, they previously based their arguments in the district court on it being a pension benefit and on it being a cash out. And they never, ever said in their denial letters that it was a benefit or a cash out. They based their last reasoning on the fact that if it leaves the plan, it's a cash out. They now admit it's not a cash out. So I think they negated all their prior arguments. Just factually, could you place Mr. Day's chronology or status? He is he retired? No, sir. He did not retire. How old was he? He's now he was 42 at the time. Okay. So he had money in the pension plan. Yes, sir, an accrued benefit. Okay. And that was a 401k or? He had money in a 401k that was, there's no contention that was also. Right. And then he, okay. But he, in the pension fund, he exercised an option to roll it out of the pension fund into an IRA. An IRA. A direct transfer, yes, sir. A direct transfer. And he was not able to withdraw that money without a tax penalty. Isn't that correct? In the IRA, yes, sir. Or in the pension plan. In both places. Either way, because until he reached the appropriate age. Yes, sir. Withdrawals would be penalized. Yes, sir. All right. So, and what AT&T is saying is that once it was withdrawn from the pension plan and rolled over into the IRA, he had received it. That is their new. Right. He had received it and they're offsetting the amount that he received. They've amortized it, I guess, over some, because it's a monthly amount. I'm not sure I understand the math on it. Essentially, there's an amortization clause that we believe is used for lump sum cash outs directly to the participant. All they do is take an actuarial value of the accrued benefit and project it over his time to 65, which is the projected disability, and it comes to $74 a month. Okay. So and that is, if I can refer to it, that's gross, because in order to get $75 per month, he would have to withdraw more than that because, at least up until age 65, because he would be paying tax. It would be taxable to him. It would be taxable. And there would be. They're not giving, they're not offsetting the net. No, sir. What he would physically receive or, you know, actually receive. And plus a 10% penalty. If he took money out of the IRA to replace that $74 offset, there would be a 10% penalty and he would be taxed. Okay. We understand the rollover itself had the effect of granting him personal control over the disbursement of the entire amount in the rollover IRA Roth subject to a tax penalty, correct? Yes, sir. I think I understand your question. He could withdraw it from the IRA, but he would pay a penalty plus tax. And he had that total control except he'd have to pay the penalty. He had control over the IRA. Not really. He could appoint a beneficiary and he could withdraw it with the penalty. But the IRA trustee controlled whether the funds could be commingled. They made sure whether there were contributions in it. They made sure it complied with all the laws governing IRAs. And Blankenship says that destroys control. They were administering the plan, right? Pardon? They were administering the plan. They administered the plan. They were the trustee of this individual trust. Thank you. Yes, sir. Okay. I'd like to save your time for a rebuttal and we'll see what the AT&T has to say. Good morning. Good morning. My name is Stephen Harris, representing the defendant, Appelli, AT&T. Plaintiff's counsel has fallen into a logical fallacy. He is trying to convince the Court that because A does not equal B and B does not equal C, A does not equal C. That is not AT&T's contention whatsoever. It's very clear that the pension plan provides for three different types of distributions. A participant can elect an immediate annuity commencing today. A participant can elect a deferred annuity commencing sometime in the future, for example, age 65. Or a participant can elect a lump sum cash out. That is exactly what Mr. Day did in this case. He elected a lump sum cash out, one of the three alternatives under the plan. He took that cash out and rolled it over outside of the plan after the money had been taken out of the plan and sent to him in a check. That is why a rollover, if you will, is not a pension plan distribution. It's a lump sum cash out. The plan and all of the documents related to the pension plan, even though we contend are not at issue in this case, are very clear that a cash out is a lump sum distribution. And the question in this case, there's really three key facts here. First, the plan conferred full discretion on AT&T and Sedgwick. Second, the LTD plan clearly provided for an offset of pension benefits. In one of three events, either, A, the benefit was cashed out, which it was here. It was definitely taken out of the plan. Mr. Day absolutely positively has no benefit left in the pension plan. Two, if the benefits are paid to the plan participant. Or three, if the benefits were, quote, unquote, received. The third relevant fact. I'm sorry. The third. I apologize. That's all right. So just to go back under the three options, you can get an, he could have taken an annuity. Now, but that would be a rollover from the plan? No. Annuities are not rollovers from plans. Those are direct distributions in a monthly amount to the participant over his or her remaining life. Okay. And so how would AT&T offset that? That would be offset. The monthly amount that was paid to the participant would be subtracted from the individual's long-term disability plan benefits, as described in the plans offset provision. So if I, if he had exercised the option to take an annuity, you know, monthly annuity, then it would have offset that amount? If he had elected to commence a monthly annuity, it's starting immediately today. Correct. Okay. His other option was to take an annuity, convert it into an annuity, but not take any distributions until age 65. Until some later date when he chose to do it. When he chose to do it. And until he chose to do that, there would be no offset. That's correct, Your Honor. No offset until he chose to do that. So it's the receipt under option one and two, the receipt of actual money to him that triggers the offset. The payment from the plan. Yes. Call it payment, receipt. Yes. Correct. It's not a cash-out, however. It's not a cash-out because who's controlling the, who's the trustee on the annuity? That's just a form of the pension plan that converts it into a fixed annuity? That's right. Okay. Generally speaking. Yeah. Subject to a lot of technicalities. Okay. So and then the lump sum cash-out is to take it out of the pension plan completely and put it under the auspices of a different, in this case, Charles Schwab is the IRA. In this particular case, that's my understanding of the IRA custodian, Your Honor. However, a cash-out means you take the money out of the plan and you, that's it. Final stop. It doesn't matter what you do next. You can put it under your mattress. You can put it in your bank account. I understand. I'm just trying to understand how it differs from the today annuity. Completely. In other words, the today annuity is still connected to the plan administration? That's correct. The funding, if you will, remains in the plan until the participant, the last remaining beneficiary passes away. All right. So with the lump sum cash-out, pulling it out, it's not, I take it, could he have rolled the money directly from the pension plan into the Charles Schwab so he never got a check? It basically just was a wire transfer between the two. That's not an option, Your Honor. The form calls it a direct rollover. However, that means that the check is made payable to Charles Schwab for the benefit of David Day. The check is physically sent to David Day, and then he forwarded it on to Charles Schwab, presumably. Okay. But could he have cashed the check without giving it to Charles Schwab? He could have requested that the check be made payable to him, certainly. Oh, by, you know. Absolutely. Okay. But he didn't. It was a copayee, right? Charles Schwab for the benefit of David Day. Whether the bank would have cashed that. Probably not. Probably not. However, he could have certainly let the check rollover period last. You're making a distinction that it's not a rollover within the plan, and that's what I'm trying to understand. Not rolled over within the pension plan. Okay. It's a complete distribution. What would be a rollover within the plan? There is no such option? No such option, Your Honor. Okay. So it either has to be in one of these two kinds of annuities. You can't put it into an IRA under the control of Charles Schwab without taking it as a cash-out. That's absolutely correct, Your Honor. All right. Now, did he he has the right to exercise these upon retirement? The right to exercise, I'm sorry, Your Honor? His three options of distribution upon his retirement. He had the right to exercise those three options upon termination of employment. Okay. And there's the Caltech case that we have where we were concerned that because the payments under the long-term disability had stopped. So the only way you could get any resumption of payments was to retire. Is that the fact here? That's absolutely not the fact here. Here, Mr. Day would have received his long-term disability benefits in full, but for the fact that he took the pension plan cash-out. In Kalvinskas, Your Honor, what happened was Caltech applied the offset even though the plaintiff hadn't taken the funds, reducing his income stream to zero, and the only way he could make that up was by taking the money out of the pension plan. A couple of points. One actual additional factual set of issues. Mr. Day was born on April 30th, 1966. That's in the supplement of the record on page 3, which makes him 39 at the time he elected his pension offset in November of 2005, 39 at the time his pension was cashed out, and 39 at the time the offset was set in stone, not age 42. Being age 39, obviously, the Age Discrimination in Employment Act wouldn't facially apply to him whatsoever. Secondly, this is not an ADEA case by any stretch of the imagination. There's no suggestion in the complaint that the plaintiff is seeking other things than benefits under a pension benefit plan. Third, still with respect to the ADEA, I would like to point out that there's no ADEA prohibited conduct here. The offset issue applies regardless of a participant's age. If a participant receives pension benefits or cashes them out at age 20, the offset applies. It applies if the participant receives them at age 30, and it applies if the participant receives it at age 40. It's a facially neutral policy, Your Honor. Third, to the extent that it's even relevant, Section 623L3 of the ADEA establishes a safe harbor. It doesn't say that that is the only way by which pension benefits can be offset. It's illustrative. And what Congress was concerned with there was the traditional pension benefit that is payable commencing, for example, at age 55. Congress wanted to ensure that employers could not effectively coerce disabled employees into retiring by offsetting their pension benefits. In that instance, it could only be applied to individuals who satisfied the retirement age of age 50. But as we know, in this particular case, Mr. Day could receive his pension benefits at any time upon retirement. And, therefore, the safe harbor is not needed. But to the extent that it were, there's no question that Mr. Day voluntarily elected the pension plan cash out. He filled out the forms. He submitted them to the plan administrator. He could have elected to keep the benefits in the plan. There's no dispute about that. The district court made a factual finding that there was no evidence in the record of an involuntary determination. That, of course, will be reviewed for clear error. The fact remains that Mr. Day's benefit was, in fact, paid to him within the meaning of the ADEA safe harbor. To claim otherwise makes no sense and would create a loophole that you could drive a Mack truck through. A plaintiff would have this Court believe somehow that Congress intended employers to be able to take an offset when the individual receives the money and puts it in his or her bank account, but that an offset would never, ever be available if the individual rolled it over into an IRA and the very next day took a distribution from the IRA and deposited that same money in their bank account. That would make no sense at all. Plaintiff's counsel argues that blankenship destroys the analysis of control. I would dispute that on several bases. First of all, blankenship is, the Court knows, was not an abuse of discretion case. It was decided under a de novo standard of review. And because it was de novo, the Court employed a, the doctrine of contraprofrentum, which does not apply. We're familiar with the case. Okay. The district, sorry, the Ninth Circuit was focused in on one of two reasonable interpretations, finding that the word receives is ambiguous, meaning, in my mind, that the defendant had at least a reasonable basis for construing the term to mean, as it did, distributed from the pension plan. The Ninth Circuit focused in on plaintiff's interpretation, however, being one of possession rather than one of control. Focusing in on that determination, I think the Ninth Circuit didn't fully explore the control aspect of the case. And to the extent it did discuss control, it was in the context of a de novo review and not a full explanation of the facts. Here the ---- So your theory is, or your reading of blankenship is, we don't look to it for any guidance because it's de novo. What troubles me is the concern that you're offsetting an amount that sits in an IRA that he cannot equate to the long-term disability amount unless he takes more money out of the IRA than what he would have had under the LTD because he, to get that amount of, or equivalent amount of money, he has to also pay a tax on it. So he's not actually receiving into his own pocket the equivalent. He's going to get a percentage of that. Well, I would argue that he is receiving it, and the tax consequences are irrelevant. You would argue that he received it once it went into the IRA. That's correct. At that point in time, it was under his control, unlike the pension plan, where he was going to be credited with fixed earnings per year. Under his IRA, he could invest in any available investment option that he wanted. He could invest in a Fidelity Magellan Fund, for example. He could invest in a Dow Index Fund, and the like, an issue of control that he certainly did not exercise under the SBC pension plan. At any rate, I would argue that blankenship is irrelevant because the plan there did not contain the critical language here, cash out. Blankenship never considered what the construction of cash out meant. Here, in the absence of any contrary authority, that discretion to interpret the plan term lies solely with the plan administrator and SEDWIC. There's no question that the abuse of discretion standard of review applies. And there's no doubt that such an interpretation, being that once you completely take all funds out of a pension plan, you've cashed out your benefit, is, in fact, reasonable. One other issue that I'd like to point out just very quickly is that there's no inconsistent reasons given for the determination in the administrative record. Here, plaintiff asserts a gotcha. He asserts in his reply brief, I think at page 27, that the October 30th letter doesn't count at all because the plan only provides for one level of appeal. And on the other hand, he attacks Judge Ware for not specifically referencing the October 29th letter. He can't have it both ways. Either it counts or it doesn't. There's no evidence that SEDWIC ever changed its mind. The reason for that is that it's been very consistent from its February 2009 letter, which was the first determination rendered after Judge Ware ordered the case on remand for determination of the pension offset, that it was applying the specified plan provision because he had, quote, unquote, received, slash, cashed out his benefit. And that reasoning remains constant through the October 29 letter. To the extent there's additional information in the October letter, it's in direct response to Mr. Day's counsel's inquiries, and Mr. Day cannot fault SEDWIC for responding to his specific inquiries. I see that I'm out of time, and just in sum, I'd like to point out that ERISA clearly permits offsets. The plan permits the offsets in question. Mr. Day's circumstances warranted the offsets. Kennedy, I'm sorry, you're over time. We don't need a summary. Thank you. Your Honor, with respect to AT&T's contention, there are three things that can happen under the plan. There's a fourth thing that can happen. You can defer, you can elect to defer receipt of your pension benefit. That's the last sentence in the 99 provision. It's not in the court's quote of the provision. And it's not in the quote of the provision in AT&T's trial brief. And I think the Court picked that up. But essentially, when Mr. Day elected to have a trustee-to-trustee transfer, he elected to defer receipt of his pension plan until he later applied to receive it from the IRA. And the treatment in the IRA is the same as in the pension plan. He can be taxed on that. He can be offset for that IRA distribution. When it's distributed, AT&T makes Mr. Day report all of his income every year. And they know when he gets income from an IRA. They require medical reports. They require, until recently, when he was going to go more than 60 miles from his house, they require income reports. They require everything. And they will know when it comes out of the IRA and it should be offset. With respect to the deferral, there's no reason for that deferral language unless the plan contemplates a direct transfer to an IRA. Kennedy. Where do we find the accurate list of the four options? They're just three sentences, Your Honor. And they're at the What are you reading from? Just tell me. Sir? What are you, what's your source? The summary plan description. It's at ER 10. And it's discussed at opening brief 10 and opening brief 17. I may have given you the wrong ER number, Your Honor. It's ER 17. And the brief is 10?  I apologize, Your Honor. Essentially, there are three sentences in that 99 provision. The first says if you are paid your pension benefit, you'll be offset as you're paid. The second is the offset parenthetical, which we believe applies only to lump sum distributions paid to Mr. Day. And the third sentence says if you elect to defer your pension benefit, it will not, your pension benefit, your disability benefit will not be reduced until you apply for it and it is actually paid to you. Now, there's no deferral if you leave the money in the plan. You don't elect to leave the money in the plan. Hold on a second. I want to see what, I'm looking at page 10 of your brief. Let me check that, Your Honor. Yes, sir. Page 10? It says it does not say that rollovers are offsettable or equate rollovers with pension benefits or cash outs. I think that's page 17. Now you're quoting the language. Your Honor, excuse me. Page 10 of my brief. Yeah, that's what I'm looking at. And it's site 17. Page 10 of my brief, the last sentence, if you are eligible, after the parenthetical, if you are eligible but elect to defer applying for any applicable pension benefit, your LTD payments will not be reduced by any pension benefits you are entitled to until such time as you apply for and are actually paid the pension benefit.    It says it does not say that rollovers are offsettable or equate rollovers with pension benefits or cash outs. The second to direct cash outs to the participant. And, Your Honor, if I may add, this section does not talk about, does not say when it leaves the plan it's offset. It says it has to be paid to you. It has to be received by you. These are all references to what happens to the participant. Where does this say you can do a trustee-to-trustee transfer? It says if you are eligible but elect to defer applying for any applicable pension benefit, your LTD That's just leaving it in the pension plan then. Could be, Your Honor, but it's also electing to do a trustee-to-trustee transfer. Where does it say that? It doesn't, Your Honor. But if it doesn't mention offsetting the trustee-to-trustee transfer, then it should not, it should not offset it. So you're disagreeing with the plan's interpretation of what a cash out is? Well, they agree that a rollover is not a cash out. Where does the, what's ER 17? What is that? Sir? What is ER 17? Is that the plan? That is the summary plan description. Do you, sir, accept the representation by your adversary here that Mr. Day was 39 years at the critical times mentioned so that the ADA does not apply? I do not know that, Your Honor. I thought he was 40 at that time. He was 42 when we started the suit. I would have to check that. But I have, I think we should prevail anyway, because the summary plan description imports into its language the wording of the ADA, paid to, received, elect. These are all ADA statutory terms. They, they imported those requirements without importing any requirement for discrimination. They essentially imported the safe harbor, saying we will only offset if you do not come within this safe harbor. And, and so, so the plan says, essentially, and at page 10, I quote the ADA right under where I quote the plan. And the operative language is essentially the same. But what they say, you will be, in the first sentence, it's offset only to the extent paid to you. That refers to a monthly annuity. The second one, if you elect a cashout, which is a lump sum paid directly to you, paid to Mr. Day, they amortize it. The third sentence, if you are eligible to elect to defer applying for any applicable pension benefit, your LTD payments will not be reduced by any pension benefits you're entitled to until such time as you apply. Now, they admit a pension benefit is not a rollover, and they admit a cashout is not a rollover. They said that they didn't admit anything of the sort. They said they didn't admit anything of the sort. Page 44 of their brief, of their response. I have it here, Your Honor, if the Court would like to see it. Just read it. Okay. At the sentence, paragraph beginning, plaintiff disagrees. His argument hinges on two factual contentions, that a cashout is not a rollover and that a rollover is not a pension benefit. Although both are true, they are irrelevant. And then they go on to say, essentially, that there was a constructive receipt when the check was mailed to him. I contend that's an admission, Your Honor. All right. All right. Thank you very much. Yes, sir. Thank you, counsel. We appreciate the argument. And we will stand in recess until adjournment. Whatever the appropriate status we're going to be in, we're done for the day. Case is submitted.
judges: Fisher, Rawlinson, Cjj Timlin (C. Cal.), Dj